## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATALIE J. VIDRA-MILLER, on behalf of herself and all others similarly situated, | CIVIL ACTION |
| Plaintiff, | |
| vs. | NO. 2:13-cv-01847(JS) |
| MIDLAND CREDIT MANAGEMENT | CLASS ACTION |
| and | |
| MIDLAND FUNDING LLC | |
| Defendants. | |

## PLAINTIFF'S MOTION FOR PRELIMINARY
## APPROVAL OF CLASS SETTLEMENT AND PRELIMINARY DETERMINATION ON
## CLASS CERTIFICATION (UNCONTESTED)

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT THEREOF

Dated: 4/24/15

**CARY L. FLITTER**
**THEODORE E. LORENZ**
**ANDREW M. MILZ**

**FLITTER LORENZ, P.C.**
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

**Attorneys for Plaintiff and the Class**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATALIE J. VIDRA-MILLER, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>  vs.<br><br>MIDLAND CREDIT MANAGEMENT<br><br>   and<br><br>MIDLAND FUNDING LLC<br>     Defendants. | CIVIL ACTION<br><br>NO. 2:13-cv-01847(JS)<br><br>CLASS ACTION |

## <u>PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND PRELIMINARY DETERMINATION ON CLASS CERTIFICATION (UNCONTESTED)</u>

Plaintiff, Natalie J. Vidra-Miller, moves the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of a Class Action Settlement.

1.   Plaintiff Natalie Vidra-Miller brings this case as a class action against Defendants Midland Credit Management ("MCM") and Midland Funding, LLC ("MF") (collectively, "Defendants" or "Midland") for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692 et seq.

2.   Plaintiff has averred that Defendants routinely sent out collection communications where the consumer's unique account number was visible through the window of the envelope in violation of the FDCPA, 15 U.S.C. § 1692f(8). *See Douglass v. Convergent Outsourcing,* 765 F.3d 299 (3d Cir. 2014). A copy of the challenged collection notice is appended hereto as Exhibit "1."

3.   The parties have now reached a Settlement Agreement, subject to approval of this Court. The Settlement Agreement is attached hereto as Exhibit "2."

4.     Plaintiff seeks preliminary approval of the Settlement Agreement and asks that the Court make a preliminary determination on class certification.  The Class is defined as follows:

> All persons with addresses within Philadelphia County, Pennsylvania, who were sent one or more letter(s) from Defendant MCM on behalf of Defendant Midland Funding, attempting to collect a consumer debt alleged due in connection with a Chase Bank USA credit card account, in which the MCM/Midland Funding account number assigned to the consumer was visible through the window of the envelope; where the letter(s) bears a send date between April 13, 2012 and April 12, 2013.

(Exhibit "2" at ¶ 1D).

5.     The Settlement Agreement is fair, reasonable, and in the best interest of the class and provides, *inter alia*, the following relief:

(a) Defendants will make a class-wide settlement payment in the amount of $202,400.00 to be paid in $55 checks to each Class Member who does not opt-out and to whom the Class Notice was not returned as undeliverable;

(b) Defendants will pay the costs of Notice and administration of the settlement;

(c) Notice of the class settlement will be mailed to the class of 3681 individuals who were mailed the challenged letter during the Class Period;

(d) Defendant will pay Plaintiff Natalie Vidra-Miller $1,000.00 for her individual claims under the FDCPA and a $2,500.00 service award for her services as Class Representative, subject to Court approval;

(e) Defendant will pay approved Class Counsel fees and expenses of $125,000.00, subject to Court approval;

(f) Plaintiff and the Class will release Defendant from the claims involving the collection communication as set forth in the Settlement Agreement.

(*See* Settlement Agreement, Exhibit "2" hereto).

6.      All requirements for class certification under Rule 23 of the Federal Rules of Civil

Procedure are satisfied here.

7.      The Class is so numerous that joinder of all members is impractical.  Defendants have attested to approximately 3681 putative Class Members and will provide a list with the names and last known addresses upon preliminary approval.  (See Exhibit "5" hereto, MCM's Resp. to Pl.'s Rogs. at #3; Exhibit "6" hereto, Dep. of Jared McClure, Midland's corporate designee, at p. 84-88).

8.      There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members.  The principal common issue is whether Defendants disclosed the consumers' account number through the window of their collection envelopes, and whether this practice violates the FDCPA, 15 U.S.C. § 1692f(8).

9.       Ms. Vidra-Miller's claim is typical of the claims of the members of the Class. All of the claims are based on the same factual and legal theories, *i.e.* -- each Class Member received the same form of collection communication with the account number visible through the glassine window of the envelope.

10.     Plaintiff will fairly and adequately protect the interests of the Class.  She is committed to vigorously litigating this matter and has retained counsel experienced in prosecuting consumer class actions.  (*See*  Exhibits "7-9", Certifications of Cary L. Flitter, Theodore E. Lorenz and Andrew M. Milz filed herewith).

11.     Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is a superior method for the fair and efficient adjudication of this controversy in that:

a.      Congress specifically contemplated FDCPA class actions as a principal means of enforcing the statute.  15 U.S.C. § 1692k(a)(2)(B).

b.     The interest of Class Members in individually prosecuting separate claims against Defendants is small because the maximum amount of statutory damages in an individual action is $1,000.00.  15 U.S.C. § 1692k(a).

c.     Management of this compact, one-county Class does not present any difficulties that would impede certification.

12.     Pursuant to Fed. R. Civ. P. 23(e)(4), Plaintiff proposes a Notice of Class Action Settlement in the form attached as Exhibit "4" hereto which affords Class Members the opportunity to request exclusion and informs Class Members of their right to object to the Class Action Settlement.

13.     As set forth in the attached Memorandum and Certifications of Counsel, which are incorporated herein, the proposed settlement was reached after arms-length negotiations, including a settlement conference with a judicial officer, is eminently fair, reasonable and in the best interests of the Class.  The settlement is recommended by Class Counsel.

WHEREFORE, for the reasons set forth more fully in the within Memorandum of Law, and attached certifications, the Court should make a preliminary determination on class certification and preliminary approval should be granted, such that Notice may issue to the Class.

Date:  4/24/15

*/s/ Cary L. Flitter*
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ

FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

**Attorneys for Plaintiff and the Class**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATALIE J. VIDRA-MILLER, on behalf of herself and all others similarly situated, | CIVIL ACTION |
| Plaintiff, | |
| vs. | NO. 2:13-cv-01847(JS) |
| MIDLAND CREDIT MANAGEMENT | CLASS ACTION |
| and | |
| MIDLAND FUNDING LLC | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND PRELIMINARY
DETERMINATION ON CLASS CERTIFICATION (UNCONTESTED)**

## I.    INTRODUCTION

Plaintiff, Natalie J. Vidra-Miller, moves the Court pursuant to Fed. R. Civ. P. 23 for preliminary approval of a Class Settlement reached in this matter involving alleged violations of the Fair Debt Collection Practices Act ("FDCPA" or "Act"), 15 U.S.C. § 1692, et seq.  Plaintiff's claims arise out of the form collection communication sent by Defendants Midland Credit Management ("MCM") and Midland Funding LLC ("MF") (collectively, "Defendants" or "Midland") which displayed the consumers' unique account number through the glassine window of the collection envelope.  The challenged collection letter is attached hereto as Exhibit "1."

The parties have now reached a class settlement, subject to approval of this Court.  The settlement was reached after two years of litigation, motion practice, discovery, and extensive arms-length negotiations between the parties including mediation with a United States Magistrate Judge.  The settlement terms are fair, reasonable, adequate, and in the best interests of

the Class. Defendants shall pay: (1) a class-wide settlement payment in the aggregate amount of $202,400.00 distributed in checks for $55.00 for each of the 3681 Class Members to whom the Class Notice was not returned as undeliverable and who choose to remain in the Class; (2) the sum of $1,000.00 to Plaintiff Natalie Vidra-Miller for her individual claims (as provided by the Act) and $2,500.00 for her services as a Class Representative; and (3) reasonable Class Counsel fees and litigation expenses of $125,000.00, subject to Court approval. Midland has also agreed to pay the costs of class administration and notice.

The complete terms of the Settlement Agreement are set forth in the attached Class Action Settlement Agreement and Release (hereinafter "Settlement Agreement") attached as Exhibit "2" hereto and discussed at length below. A copy of the proposed Order for Preliminary Approval is separately filed herewith as Exhibit "3." The proposed Order for Preliminary Approval establishes certain dates and the method for mailing notice to the Class, the procedure and timing for administration and filing of objections, if any, to the settlement, or requests for exclusion by members of the Class. The proposed Class Notice to the members of the Class is filed herewith as Exhibit "4."

For the reasons set forth more fully herein, Plaintiff submits that all the requirements of Rule 23 are met, that preliminary approval of the settlement should be granted, a preliminary determination allowing class certification and Notice permitted to issue to the Class.

## II.  NATURE OF THE CASE

### A.  Factual and Procedural Background

Plaintiff, Natalie J. Vidra-Miller brings this case as a Class Action against Midland Credit Management ("MCM") and Midland Funding, LLC ("MF") (collectively, "Midland" or "Defendants"). Vidra-Miller sued to redress Defendant's violation of the Fair Debt Collection

Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), alleging that Defendant debt collector violated the provision of the FDCPA prohibiting a collector from:

> "Using any language or symbol, other than the debt collector's address, on an envelope when communicating with a consumer by use of the mails or telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."

15 U.S.C. § 1692f(8).

The Amended Class Complaint (Doc. No. 2) alleges that the Midland Defendants sent a collection dun to Ms. Vidra-Miller (then, "Vidra") dated April 13, 2012. The letter was an effort to collect on a consumer debt, *i.e.*, an old Chase Bank credit card bill allegedly acquired by Defendant Midland Funding. The April 13, 2012 letter was sent to Vidra-Miller in a window envelope. Through the window of the envelope, there is visible the account number that Midland assigned to Vidra-Miller for collection of the debt claimed due, ending in 8488. A copy of the April 13, 2012 collection letter is Exhibit "1" hereto, and the top portion of the letter is reproduced here (save partial redaction of the account number per Fed. R. Civ. P. 5.2):



According to Jared McClure, MCM's Director of Consumer Marketing and Defendants' corporate designee, Exhibit "1" (reproduced in part above) is a form of "marketing" collection

letter offering settlement that MCM denotes an "ED01" letter. (Exhibit "6," McClure depo. at pp. 61-62). MCM sends these collection letters on behalf of its related entity MF. (McClure dep. at p. 75). The ED01 letter is mailed in a window envelope. (Id. at p. 67-69, 98). The number appearing through the window of the envelope corresponds to the unique account number Midland assigned to Ms. Vidra-Miller's account. (Id.).

In the Class Complaint, Vidra-Miller alleges that Midland's placement of the assigned Midland account number through the window of the envelope violates the privacy provisions of the Fair Debt Collection Practices Act at 15 U.S.C. § 1692f(8), which prohibits any such disclosure. Ms. Vidra-Miller brought this action on her own behalf and on behalf of a Class of all persons with addresses in Philadelphia County, Pennsylvania, who received a similar letter collecting a Chase Bank, N.A. debt. (Doc. No. 2, Am. Compl. at ¶ 22). Defendant has stated that the subject letters, in the same format as the Vidra-Miller letter, were mailed to approximately 3681 Philadelphia County consumers in the attempt to collect a consumer debt in connection with a Chase Bank, N.A. account during the Class period. (*See* Exhibit "2" hereto, Settlement Agreement at ¶ 1D; Exhibit "5" hereto, MCM's Resp. to Pl.'s Rogs. at #3; Exhibit "6" hereto, Dep. of McClure, at p. 84-88).

On June 4, 2013, Midland filed a Motion for Judgment on the Pleadings, arguing that the court should adopt a "benign language" exception to the statute and that, based upon the cases that adopted such an exception, display of the assigned account number does not violate the FDCPA. (Doc. No. 10). On June 21, 2013, Vidra-Miller filed her Response in Opposition (Doc. No. 12), and on June 25, 2013, Midland filed a Reply in Support. (Doc. No. 13). On July 17, 2013, the Court heard oral argument and by Order dated July 19, 2013, denied Defendant's motion for judgment without prejudice. (Doc. No. 15).

By Order dated October 3, 2013, the Court stayed the case on consent pending the decision by the U.S. Court of Appeals for the Third Circuit in *Douglass v. Convergent Outsourcing,* No. 13-3588, a case where plaintiff appealed the district court's grant of summary judgment for the debt collector and dismissed the plaintiff's suit to redress exposure of the account number through a window envelope. By Judgment and Opinion dated August 28, 2014, the Third Circuit reversed the district court's decision in *Douglass* and remanded the case for further proceedings. *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014). The *Douglass* court (per Scirica, J.) held that the collector's account number "is a piece of information capable of identifying [the plaintiff] as a debtor. And its disclosure has the potential to cause harm to a consumer that the FDCPA was enacted to address." *Id.* at 306.

After *Douglass,* the stay in this case was lifted and the matter restored to active litigation. (Doc. No. 22). Upon return to the active docket, and with class certification and summary judgment practice looming, the parties began informal settlement negotiations. On March 3, 2015, the parties appeared before United States Magistrate Judge Heffley, and the framework for a class-wide settlement was reached in principle. After additional issues related to settlement language and administration were resolved, a Settlement Agreement and related documents was prepared by Class Counsel, and agreed to by the parties. The Plaintiff now presents the agreement to the Court for Preliminary Approval.

### B. Details of this FDCPA Class Action Settlement

The FDCPA specifically contemplates the class action as a tool of enforcement. 15 U.S.C. § 1692k(a)(2), (b)(2). As recognized by our Court of Appeals, Congress intended the FDCPA to be enforced by debtors acting as private attorneys general, and specifically by the private class action mechanism. *Weiss v. Regal Collections*, 385 F.3d at 345 and n.13 (class

actions are "well-suited to the FDCPA"). Cases challenging the legality of form collection notices have been routinely certified in this district, because they represent a paradigm of Rule 23's requirements. *See e.g., Harlan v. Transworld Sys., Inc.,* 302 F.R.D. 319, 328 (E.D. Pa. 2014) (certifying FDCPA class for settlement); *Rosenau v. Unifund Corp.*, 646 F.Supp.2d 743, 747 (E.D. Pa. 2009) (class certified on contest, then settled, in FDCPA letter case); *McCall v. Drive Financial Serv.*, 236 F.R.D. 246 (E.D. Pa. 2006) (FDCPA class certified over form collection letter); *Jordan v. Commonwealth Fin. Sys.,* 237 F.R.D. 132 (E.D. Pa. 2006) (same).

The Act provides that statutory damages in a class case are capped at the lesser of 1% of the debt collector's net worth or $500,000.00. 15 U.S.C. § 1692k(a)(2)(B). Midland concedes that its net worth exceeds $50 million dollars. (*See* Exhibit "6," McClure dep. at p. 145). Thus, the potential class recovery at trial, or 1% of Midland's net worth, is capped at $500,000.00 (a sum, which, divided among the 3681 Class Members, would yield about $136.00 per capita). Settlement avoids the need for the Court or a jury to determine the contested question of liability, or the extent of damages available under the FDCPA.

In settlement of this suit, the Defendant will create a Settlement Fund of $202,400.00, yielding $55.00 payments to the Class Members. (Exhibit "2", Settlement Agreement, ¶ 15(A)). Defendant will also pay, subject to Court approval, Class Counsel fees and litigation expenses in an amount capped at $125,000.00. (Id. at ¶ 16). At the time of final approval, Plaintiff will make appropriate request for approval of Class Counsel fees and costs. Additionally, as part of the settlement, Defendant has agreed to pay Plaintiff Vidra-Miller an individual award of $1,000.00 and seek a class representative service award of $2,500.00, plus any share in the class recovery. (Id. at ¶ 15(D)). *See Fry v. Hayt, Hayt and Landau*, 198 F.R.D. 461, 472 (E.D. Pa. 2000) (holding named plaintiff, may, under FDCPA, receive her statutory recovery plus any share of

class recovery under unique wording of Act); *Rosenau v. Unifund Corp.*, 646 F. Supp. 2d 743, 755 (E.D. Pa. 2009) (discussing propriety of incentive award in FDCPA class settlement).

For the reasons which follow, Plaintiff submits that this is a favorable settlement for the Class. The settlement should be preliminarily approved and notice permitted to issue.

## III.  ELEMENTS FOR CLASS CERTIFICATION ARE MET

### A.  Standard for Class Certification - Preliminary

 "[B]efore approving a class settlement agreement, a district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*) (internal quotation marks omitted)). At this stage, the Court is to make "a 'preliminary determination' on class action certification for purposes of issuing notices of settlement ..." *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 586 (3d Cir. 2014). After Notice has issued, and at the final approval stage, the district court must apply a rigorous analysis of the Rule 23 elements, while mindful of the strong judicial policy in favor of class action settlement. *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir. 2013).

Routinely, the four Rule 23(a) requirements are described as "numerosity," "commonality," "typicality," and "adequate representation." *Montgomery Cnty., Pa. ex rel. Becker v. MERSCORP, Inc.*, 298 F.R.D. 202, 209 (E.D. Pa. 2014). In order for a class to be certified, all four requirements of Rule 23(a) must be satisfied along with one of the three categories of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 249 (E.D. Pa. 2006); *Parks v. Portnoff Law Associates, Ltd.*, 210 F.R.D. 146, 149 (E.D. Pa. 2002). Certification here is sought under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any

questions affecting only individual members," such that "a class action is superior to other methods for fairly and efficiently adjudicating the controversy." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011). All the required Rule 23 elements are met here.

### B. The Proposed Class Meets the Requirements for Certification

#### 1. Rule 23(a)(1) – At 3681 Consumers, the Class is Sufficiently Numerous

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable." *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir. 1984). Our Court of Appeals has held that generally a class of more than 40 satisfies the numerosity requirement. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *Sherman v. Am. Eagle Express, Inc.*, 2012 WL 748400, *4 (E.D. Pa. Mar. 8, 2012).

Midland represented in verified discovery responses that it sent the subject collection communication to 3681 Philadelphia consumers. (See Exhibit "5" hereto, MCM's Resp. to Pl.'s Rogs. at #3; Exhibit "6" hereto, McClure dep. at p. 84-88). Defendants have compiled the list of the names and last known addresses of the identified Class Members and will provide the list upon preliminary approval of the class settlement. (See Ex. "6," McClure dep. at p. 84-88; see also Ex. "2", Settlement Agreement at ¶ 7(B)). Joinder of all 3681 members of the Class is impracticable and, Rule 23(a)(1)'s numerosity requirement is readily met.

#### 2. Rule 23(a)(2) – Defendants' Standard Form Collection Communication Presents Common Issues of Law and Fact

Turning to the second component of Rule 23(a), "commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 131 S. Ct. at 2551 (citations omitted). It is the law in the Third Circuit that a putative class satisfies the commonality requirement if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez*, 726 F.3d at 382 (quoting *Baby Neal v.*

*Casey*, 43 F.3d 48, 56 (3d Cir.1994)). Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all Class Members. *Baby Neal*, 43 F.3d at 56-57; *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 624 (E.D. Pa. 1994); *Tenuto v. Transworld Sys., Inc.*, 2000 WL 1470213 at *2 (E.D. Pa. Sept. 29, 2000) (holding consumer's theory which rests upon the "same facts about the [collection] letter and defendant's collection practices" towards the class members establishes commonality for FDCPA class).

Where the defendant has engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents, the commonality requirement is generally met. *Harlan,* 302 F.R.D. at 328; *Chakejian v. Equifax Inf. Srvs., Inc.*, 256 F.R.D. 492, 497 (E.D. Pa. 2009); *McCall*, 236 F.R.D. at 250. As stated by Judge Davis, "Because [class representative's claims] are based entirely upon the uniform, non-individualized content of defendants' standardized debt collection letters, [the FDCPA claims] are factually and legally common to the proposed classes." *Jordan*, 237 F.R.D. at 138.

There are questions of law and fact common to the Class. Factually, Midland confirmed that the letter it sent to Vidra-Miller and the Class is a form letter. (Ex. "6", McClure dep. at 61-62). There is no dispute that Defendant used a window envelope through which the account number printout was visible. (Id. at 98). In the case of each Class Member, there is no dispute that these letters were sent to collect alleged debts incurred for consumer purposes (i.e., for personal, family or household purchases). This is inherent in the class definition Midland utilized "to pull all the individuals who lived in the Philadelphia County who were Chase consumers, and also received this letter in this format." (*See* Id. at 84-85). The class of 3681 Philadelphia County consumers is easily ascertainable from Defendant's own records. (Id.); *see Harlan,* 302 F.R.D. at 328, n.14 (class readily ascertainable in FDCPA letter case).

The primary legal questions presented are (1) whether Defendants' form collection letter and envelope bear an account number, i.e. reveals language or symbols disallowed by § 1692f(8); (2) whether Defendants' collection communication constitutes unfair or unconscionable collection practices under 15 U.S.C. § 1692f; and, if liability is established; (3) the amount of statutory damages to be awarded to the class as a whole. 15 U.S.C. § 1692k(a)(2)(b). What "matters to class certification … is the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551. These questions are common to all Class Members' claims.

### 3. Rule 23(a)(3) – Typicality is Met as Plaintiff Presses the Same Claim as Every Member of the Class

Rule 23(a)(3) requires that the claims of the named plaintiff be typical of the claims of the Class. A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other Class Members and his or her claims are based on the same legal theory. *Baby Neal*, 43 F.3d at 57. The typicality requirement may be satisfied even if there are some factual distinctions between the claims of the named plaintiff and those of other Class Members. *Id.* at 57-58; *Stewart v. Associates Consumer Discount Co.*, 183 F.R.D. 189, 196 (E.D. Pa. 1998). Here, all Class Members received a collection communication substantially identical to the one received by Ms. Vidra-Miller, *i.e.*, with the account number visible through the window. This uniform collection communication to members of the Class forms the basis of the class claim.

Typicality is inherent in the class definition, *i.e.*, each of the Class Members were subjected to the same communication and same violation as the named Plaintiff. All Class Members' claims arise from the same practices by Defendants which gave rise to Ms. Vidra-Miller's claims – each Class Member was sent a collection envelope which revealed their

10

account number.  *See McCall*, 236 F.R.D. at 250.  This prong is especially easy to meet here because the claim does not turn on Ms. Vidra-Miller's own subjective reaction to the letter. Rather, Defendants are subject to strict liability for violating § 1692f.  *See Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011).  There are no unique facts or circumstances that would render Ms. Vidra-Miller atypical.  The typicality requirement is met.

### 4.  Rule 23(a)(4) – Ms. Vidra-Miller and Her Counsel are Adequate

Rule 23 also requires that the named plaintiff provide fair and adequate protection for the interests of the Class.  Fed. R. Civ. P. 23(a)(4).  This requirement "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Allen v. Holiday Universal*, 249 F.R.D. 166, 180 (E.D. Pa. 2008) (citing *Baby Neal,* 43 F.3d at 55).  Satisfying this requirement involves two factors: (1) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation, and (2) whether the plaintiff has interests antagonistic to those of the class.  *See Allen*, 249 F.R.D. at 180; *McCall*, 236 F.R.D at 250; *Lake*, 156 F.R.D. at 624.  Both prongs are readily met here.

Ms. Vidra-Miller is represented by counsel experienced in consumer class action litigation.  Cary L. Flitter and Flitter Lorenz, P.C. have been appointed as qualified Class Counsel by this Court and others in dozens of consumer class actions.  Flitter serves on the adjunct faculty (consumer protection law) at Temple University's Beasley School of Law and Widener University School of Law, and is co-author of *Pennsylvania Consumer Law*, Geo. Bisel Publishing Co.  A full statement of qualifications is included within the Certification of Cary L. Flitter attached hereto as Exhibit "7."

Ms. Vidra-Miller and the Class will also be represented by Theodore E. Lorenz of the Flitter Lorenz firm. Mr. Lorenz has experience as a judicial clerk and as Senior Deputy Attorney General for the Commonwealth of Pennsylvania. Mr. Lorenz is an experienced litigator and has presented CLE's on consumer law. Mr. Lorenz has been approved as class counsel by this Court and others in numerous matters arising under state and federal consumer protection laws. Mr. Lorenz's credentials are more fully set forth in his Certification attached hereto as Exhibit "8."

Andrew M. Milz will also represent Ms. Vidra-Miller and the Class. Mr. Milz is an associate of the Flitter Lorenz firm where he has worked on consumer credit litigation, including several class action matters under the federal consumer protection laws. Milz is a published author and lecturer on consumer law issues, with trial and appellate experience in consumer protection and class action law. (Exhibit "9" hereto, Milz Certification). As recently recognized by this Court, the Flitter Lorenz firm "are experienced class action litigators under federal consumer protection laws such as the FDCPA." *Harlan v. Transworld Sys.*, 2015 WL 505400, *4 (E.D.Pa. Feb. 6, 2015).

There is also nothing to suggest that Plaintiff Vidra-Miller has any interest antagonistic to the Class. She is prepared to vigorously pursue this lawsuit filed on behalf of herself and the Class of Philadelphia County, Pennsylvania residents designated in the Complaint. She has maintained regular contact with counsel, has been closely involved in approving settlement terms, attended and participated in the settlement conference, and has generally gone out of her way to assure the best result for the class she represents. There are no individualized issues, for example, of reliance or intent, or defenses unique to Ms. Vidra-Miller. Given the identical nature of the claims and class damages between the Plaintiff and the Class Members, there is no potential for conflicting interests in the class action. *See Allen*, 249 F.R.D. at 180.

Plaintiff respectfully submits that the adequacy prong is readily met, as are all of the elements of Rule 23(a).

### 5. Rule 23(b)(3) – Common Questions of Law or Fact Predominate

Rule 23(b)(3) requires that the questions of law or fact common to all members of the Class predominate over questions pertaining to individual members. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). This criterion is normally satisfied when there is an essential common factual link between all Class Members and the Defendants for which the law provides a remedy. *See Lake*, 156 F.R.D. at 625. In this case, the "common nucleus of operative fact" is that all Class Members were sent collection communications from Midland that revealed the consumers' account number through the window of the envelope.

Predominance is generally established in cases dealing with the legality of standardized documents and practices because the document is the focal point of the analysis. *McCall*, 236 F.R.D. at 254 (FDCPA class, predominance readily met). Here, the claims of the Class arise from the same collection communication and envelope, and the same practices of the Midland Defendants.

In addition, there is a uniform statutory damages provision under the FDCPA for class action matters. 15 U.S.C. § 1692k(a)(2). No concern is present over the damage calculation – the statutory damage formula is uniformly applied across the class. 15 U.S.C. § 1692k(a)(2); *compare Behrend*, 133 S. Ct. 1426 (complex damage matrix may impede predominance). Both the issues of fact and the issues of law are straight forward, and predominate.

### 6. Rule 23(b)3) – A Class Action is Superior to Other Available Methods to Resolve this Controversy

Superiority is the final element of class certification pursuant to Rule 23(b)(3). *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 315 (3d Cir. 1998); *Lake*, 156

F.R.D. at 625. The superiority element requires courts "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication.'" *MERSCORP,* 298 F.R.D. at 216 (*citing In re Community Bank of N. Va.*, 418 F.3d at 309). Efficiency is a primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Id.; Lake*, 156 F.R.D. at 625-26. It is proper for a court, in deciding the best available method, to consider the "… inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Lake,* 156 F.R.D. at 626.

In this case, there is no better method available for the adjudication of the claims which might be brought by each individual debtor subjected to Defendants' practices. Class actions are simply a more efficient and consistent means of resolving the legality of a form collection communication. *Jordan,* 237 F.R.D. at 139-40; *Tenuto*, 2000 WL 1470213 at *4.

This Court has recognized that, due to the Act's limits on class recovery, defining the class to a particular geographic area (here, Philadelphia County) "is to Class members' advantage because the total recovery will be divided under a smaller number of individuals than if the class were defined more broadly." *Harlan*, 302 F.R.D. at 326, n. 11. (Philadelphia County class).

The Third Circuit has recognized the efficacy of FDCPA class actions where the individual's claim is small:

> A significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from the recovery." The Supreme Court also commented that "[c]lass actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually. For example, this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in Court if a class action were not available." This "[c]ost-spreading can also enhance the

means for private attorney general enforcement and the resulting deterrence of wrongdoing."

*Weiss,* 385 F.3d at 344-45.  One of the primary functions of the class suit is to provide a device for vindicating claims, which, taken individually, are too small to justify legal action but which are of significant size if taken as a group.  *Id.*; *Lake,* 156 F.R.D. at 628-29.

As one Court observed in an FDCPA case:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997), *quoted with approval in Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997); *accord Weiss,* 385 F.3d at 344-45.  As discussed below, there will be a Class Settlement Fund of $202,400.00.  At that figure, each Class Member will receive a check for $55.00, without the need to submit any claim form.  This is an excellent recovery and a superior way to proceed.

## IV.     THE CLASS SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL

### A.   Standards for Preliminary Approval

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval.  Fed. R. Civ. P. 23(e); *In re Flonase Antitr. Litig.*, 291 F.R.D. 93, 98 (E.D. Pa. 2013); *Oslan*, 232 F. Supp. 2d at 439-40.  The procedure for approval of a proposed Class Action Settlement involves a two-step process: (1) a "preliminary approval" order; and (2) a "final approval" order after notice of the settlement is provided to the class and a hearing to consider the fairness of the proposed settlement has been held.  *See* MANUAL FOR COMPLEX LITIGATION,

Fourth (2004) ("MCL") §§ 21.632; *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008).

In considering preliminary approval, courts make an initial evaluation of the fairness of the settlement, prior to notice. Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the Class and falls within the range of possible approval, preliminary approval is warranted. *Id.* at 439; *MCL* 4th § 21.632. When determining preliminary approval, the issue before a court is whether the proposed settlement appears fair, reasonable and adequate. *Gates*, 248 F.R.D. at 438. In undertaking its analysis, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. *See In re Fasteners Antitr. Litig.,* 2014 WL 285076 at *4 (E.D. Pa. Jan. 24, 2014) ("courts have given considerable weight to the views of experienced counsel as to the merits of a settlement.").

There is a "strong presumption in favor of voluntary settlement agreements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010). "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Id.* (*quoting In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 784 (3d Cir. 1995)). A "preliminary determination" on class certification is warranted. *In re NFL Players Concussion Injury Litig*, 775 F.3d at 586.

### B. Preliminary Approval Should be Granted

#### 1. The Settlement was Reached After Arms-Length Negotiations

This case was filed two years ago, in April 2013. Since then, the parties have engaged in pitched litigation – including dispositive motion practice. (See Section II.A. *supra* detailing

procedural history). Plaintiff was constrained to defend her claims from dismissal in opposing Defendants' Motion for Judgment on the Pleadings. Written class and merits discovery was propounded by Plaintiff and answered by the Defendants. Plaintiff took depositions of Defendants' corporate designee Jared McClure in San Diego, and representatives of two mail houses utilized by Midland, one local and one deposed in Minnesota. The parties attended a mediation before Hon. Marilyn Heffley, U.S.M.J. on March 3, 2015, where an agreement for a class-wide settlement was reached in principle. (*See* Certification of Cary L. Flitter, Esq., Exhibit "7" at ¶ 28; Exhibit "2", Settlement Agreement). The litigation, as well as the mediation and settlement negotiations resulted in an Agreement which was the product of serious, informed, non-collusive negotiations among counsel.

## 2. The Settlement is Fair and Contains No Deficiencies

The consideration provided for in the Settlement Agreement is substantial. If this settlement is approved at $202,400.00 for the Class, each Class Member can expect to receive a check for $55.00, and as noted <u>without</u> the need for the Class Member to file any claim form. No actual damages were sought by this class case. This is a significant portion of the best-case class-wide recovery (potentially $136 per capita if awarded maximum damages at trial), and represents an excellent result.

Plaintiff will request attorney fees and costs not to exceed $125,000.00. The payment of fees and costs is expressly called for under the FDCPA, 15 U.S.C. § 1692k(a)(3). These statutory counsel fees are designed to encourage competent counsel to accept fee-shifting cases on a contingent basis. *See Graziano,* 950 F. 2d at 111-13. Class Counsel's lodestar, after two years of litigation and out of state depositions, will exceed this amount by the end of the case, but Counsel has agreed to cap its request to facilitate settlement. Midland has agreed to pay and not

oppose the fees and costs capped at an aggregate $125,000. (Plaintiff's motion for approval of attorney fees and costs will accompany the motion for final approval of the class settlement).

Midland has also agreed to pay Ms. Vidra-Miller $1,000.00 for her individual statutory damages under the FDCPA as well as a service award of $2,500.00. As stated by Judge Rufe, such awards are "surely proper to provide reasonable incentives to individual plaintiffs whose willingness to participate as lead plaintiffs allows class actions to proceed and so confer benefits to broader classes of plaintiffs." *Rosenau v. Unifund Corp.*, 646 F. Supp. 2d 743, 755 (E.D. Pa. 2009) ($1,000 in statutory damages plus $3,000 service award approved in FDCPA case); *Orloff v. Syndicated Office Sys., Inc.*, 2004 WL 870691 (E.D. Pa. Apr. 22, 2004) ($5,000 service award in FDCPA case).

In exchange for the above consideration, Midland obtains a release of class member claims for damages stemming from the offensive collection communication. Importantly, the release is narrowly tailored to those claims arising from the challenged letter. (See Exhibit "2", Settlement Agreement. at ¶ 1E).

The aggregate settlement contains a real cash benefit to Class Members, contains no obvious deficiencies, and should be approved preliminarily.

### 3. The Settlement is Within the Range of Reasonableness

The reasonableness of a proposed settlement depends in part upon a comparison of the present value of the damages the plaintiff would recover if successful, discounted by the risks of not prevailing. *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (*citing In re General Motors*, 55 F.3d at 806).

As stated above, in a class action case the FDCPA limits recovery to the lesser of $500,000.00 or 1% of the defendant's net worth, 15 U.S.C. § 1692k(a)(2); *see Rosenau*, 646 F.

Supp. 2d at 753 (discussing risks of establishing net worth in FDCPA case). The Midland Defendants have a net worth of over $50 million, thus capping class statutory damages at 1% or $500,000 to be shared by the 3681 Class Members. 15 U.S.C. § 1692k(a)(2). The amount is in the discretion of the jury, with factors including frequency, persistence, nature of the non-compliance, and intent. 15 U.S.C. § 1692k(b)(2). The settlement achieved here, facilitated in part through the deft assistance of the Magistrate Judge, provides $55 per Class Member - more than forty percent (40%) of the *best possible* class recovery at trial, yet without the delay, risk, uncertainty and cost of continued litigation.

### 4. Class Counsel Recommends the Settlement

Class Counsel has extensive experience in class action litigation in the areas of consumer protection law and the FDCPA, and are thoroughly familiar with the factual and legal issues of the case. (*See* Flitter Cert., Exhibit "7"). The Settlement followed a thorough investigation by Class Counsel into the merits of the case, dispositive motion practice and discovery including out of state depositions. Class Counsel was able to investigate and debunk Midland's primary argument that the mail service they hired simply added the challenged account number on their own initiative. (See Ex. "10" hereto, dep. of Brian Ostenso, representative of Direct Marketing Group, at pp. 32-39, testifying Midland directed and required placement of account number through window envelope). Counsel have analyzed each of Defendants' arguments against the merits of Ms. Vidra-Miller's claim, Defendants' affirmative defenses, and any potential arguments against class certification, and has thus developed an appreciation about the time and effort that future, prolonged litigation would entail. (Ex. "7", Flitter cert.).

Defendant argued that the account number displayed is one known only to Midland, and was not (and could not, they contend be) used by any malefactor against Ms. Vidra-Miller. And,

continued litigation would delay resolution and any payments for months, or perhaps years, while the litigation pends.

For all these reasons, Class Counsel recommend the settlement for preliminary approval and issuance of notice.

## V.     <u>CLASS NOTICE</u>

With the Settlement Agreement and this Motion, Plaintiff submits a proposed form of Notice to the Class.  A true and correct copy of the proposed Class Notice is appended hereto as Exhibit "4".  (Of course, the blanks for dates will be filled in before mailing).  In plain-English, the Notice informs Class Members regarding (a) formation of the Class; (b) the Class definition; (c) claims, defenses and issues in the case; (d) terms of the proposed settlement; (e) the request for an award of attorney's fees and expenses to Class Counsel; (f) the agreed individual settlement payment to representative Plaintiff; (g) the Class Member's right to opt-out, and thereby not participate in the proposed settlement; (h) Class Member's right to appear and object to the proposed settlement; (i) the time, date and location of the final approval hearing; and (j) Class Member's right to appear at the final approval hearing in favor of or in opposition to the proposed settlement.

The proposed Notice comports with the requirements of Rule 23(c) and 23(e) as amended, and with the Court of Appeals' decision in *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 185 n.6 (3d Cir. 2006), recommending plain-English class notices.  The Notice is clear and reader friendly, and provides Class Members with sufficient information to make an intelligent decision as to whether to remain in the Class, opt-out, or object to any aspect of the proposed settlement.  Plaintiff has looked to, indeed borrowed from, the recommended notices provided by the Federal Judicial Center's website, www.fjc.gov.  Administration of Notice, opt-

outs, objections and settlement checks will be handled by Dahl Class Action Administration of Minneapolis, MN an experienced Claims Administrator, www.dahladministration.com. (Exhibit "2," Settlement Agreement ¶ 6).[1]

Plaintiff proposed Notice by first class mail, which comports with Fed. R. Civ. P. 23(c)(2) requiring the best notice practicable under the circumstances. *See Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 113 (E.D. Pa. 2005) (approving mail notice in FDCPA class settlement).

## VI.  CONCLUSION

The proposed settlement puts an end to this litigation, and falls well within the range of a fair, reasonable and adequate award.  Preliminary approval should be granted, and the Class Notice approved and directed in the form proffered.  Further, the proposed settlement Class meets the requirements of Rules 23(a) as well as Rule 23(b)(3).  Plaintiff Natalie Vidra-Miller respectfully requests that the Court make a preliminary determination approving the Class settlement pursuant to Rule 23.


Date:  4/24/15                                    */s/ Cary L. Flitter*
                                                   CARY L. FLITTER
                                                   THEODORE E. LORENZ
                                                   ANDREW M. MILZ

                                                   FLITTER LORENZ, P.C.
                                                   450 N. Narberth Avenue, Suite 101
                                                   Narberth, PA 19072
                                                   (610) 822-0782

                                                   **Attorneys for Plaintiff and the Class**

---

[1] The settlement provides for administration, at Midland's expense, by A.B. Data "or another qualified administrator mutually agreeable to the parties." *Id.* Since the drafting of the agreement, Midland has expressed a preference for the Dahl firm. Class Counsel is acquainted with Dahl's reputation, and is agreeable.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATALIE J. VIDRA-MILLER, on behalf of herself and all others similarly situated, | |
| Plaintiff, | CIVIL ACTION |
| vs. | NO. 2:13-cv-01847(JS) |
| MIDLAND CREDIT MANAGEMENT | CLASS ACTION |
| and | |
| MIDLAND FUNDING LLC | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I, CARY L. FLITTER, hereby certify that a copy of Plaintiff's Motion for Preliminary Approval of Class Settlement (Uncontested) has been electronically filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to:

Andrew Schwartz, Esquire
MARSHALL DENNEHY
WARNER COLEMAN & GOGGIN
2000 Market Street, Suite 2300
Philadelphia, PA 19103
**Attorney for Defendants**

Said document is available for viewing and downloading from the ECF system.

Date: April 24, 2015          _/s/ Cary L. Flitter_____
                              CARY L. FLITTER